United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Thank you. Good morning everyone. The first argued case is number 19, 1793, Hardy against the United States. Ms. Kranz, proceed. Good morning and may it please the Court. My name is To prevail in this Fifth Amendment takings claim, plaintiffs must establish that they hold an interest in the rail corridor that has been converted to trail use. In other words, that the railroad acquired only an easement for its corridor rather than a fee interest, and that plaintiffs and not someone else would gain unencumbered fee when the railroad easement terminated. Because the parties to the original transfers at issue here may be, the Court looks the words in those deeds to determine their meaning, applying Georgia law. Now we ask the Court to reverse the CFC's decision because the Court erred in three respects. First, because all of the rail corridor deeds that issue in this appeal purport to convey land, and they contain no express or even implied limitation on the estate conveyed. Those deeds convey the title to the railroad. Ms. Kranz, this is Judge Lori, as you probably can figure out. These documents describe a right-of-way of a strip of road, and Georgia law indicates that a right-of-way is generally an easement, not a grant of fee simple. So there's an important difference between the grant of, quote, a right-of-way and the grant of, quote, a strip of right-of-way. The Valdosta case is very helpful because it really lays this out and it talks about the wide distinction between these two different senses of the phrase right-of-way. But the problem is, Ms. Kranz, that the Court of Federal Claims drew those distinctions very carefully among the various landholders and the various plaintiffs in this class action. And yet you're asking us, I gather from your briefs, just for a mass reversal for everything along the corridor or the corridor by the milepost you designated. We're asking for a reversal as to basically a set of deeds that all contain the same operative language that does not, as the CFC found, convey an easement. It conveys fee. The Court of Federal Claims, as a preliminary matter, did not recognize the principle in Georgia law that a deed conveys fee, properly executed deed conveys fee, unless it contains an express limitation of the estate conveyed. That is a... I don't think that's quite accurate. Georgia law, at least as I read it in the transcript. Yes, of course it does. But the starting place is that you are presumed to have fee unless the intention of the parties can be discerned that they intended to convey less than fee. And you look, of course, for the words in the deed to determine that. Now, the cases upon which the plaintiffs are relying here all contain either express limitations on the estate conveyed, or some reservations for the grantor, or affirmative requirements placed on the grantee that are inconsistent with that grant fee. We don't have any of that here. Counsel, didn't they all involve a nominal, a minimal consideration? Isn't that quite relevant? It is one factor, but the CFC effectively treated it as the other factor, the only factor. That was really the only line upon which the CFC distinguished between a set of deeds that contained the same language. And some of them the court found conveyed fee and some the court found conveyed an easement. But we see in the words versus... Ms. Krantz, this is Judge Stoll. This is Judge Stoll. Didn't the Court of Federal Claims also right-of-way deed? It's not as if the only thing that the Court of Federal Claims emphasized was the small amounts of compensation. There were other factors that it identified. Yes, but that same title, of course, applied to some of the deeds that the court found conveyed fee. I understand. I'm just correcting your overstatement, which was that the only thing the Court of Federal Claims relied on was the amount of compensation. I don't think that's quite right. Well, I'm sorry. I just meant that the court... That was the only thing that distinguished between certain deeds the court found conveyed easements versus certain deeds the court found conveyed fees. That was the only difference. I want to point to the Woods versus Flanders case because that case, pretty similar to here, had a deed that was a strip of land for just $1. It's clear from the deed that the intended use is for a rail line. Also, one thing that I hadn't noticed before last night, and I wish I had, is in that case, they actually cite the Georgia statue that recognizes the presumption of a fee transfer. The idea that that presumption is not alive and well in the railroad context is, I think, abundantly clear even without the Woods case, but the Woods case certainly makes it even more clear. Again, I think one of the critical things that it does not appear that the CFC took into consideration was the different meanings of the phrase right-of-way. Yes, the deed says right-of-way, but there is no reason to think that that title means easement deeds as opposed to railroad corridor deeds. Our position here is that the phrase right-of-way in these deeds, both in the title and in the text of the deed, the phrase right-of-way is not limiting the estate conveyed. It's just describing the purpose of the transfer under subtle Georgia law, an indication of the intended use of real estate that's being transferred. It's not an express limitation of the estate. We see that in the Holloman versus Board of Education case, in the Knight case, Dwanberg, Holloman, sorry, Valdosta, Jackson versus Rogers. These are all cases where the deeds are very pretty explicit about what the intended use of the property is going to be, but that does not limit the estate conveyed. If you want to limit the estate conveyed, you say so. You say, I'm only granting a right-of-way, not I'm granting land for right-of-way, or you create a reservation to the grantor that is inconsistent with the grantor fee, or perhaps you have a clause that says, if you don't use this for specific purposes, it will revert to me. These deeds don't have any features like that, and in the absence of those features, the Courts of Georgia have consistently found the grant of a fee interest, even in the railroad context. Counsel, do you want to address the NTIU issue that you've raised? Sure. So, there was an error in the original NTIU at issue here. The NTIU basically used language that the railroad had provided that had the starting and ending terminuses of the section of rail line that it intended to propose for abandonment, and then later considered converting to trail use. One of those endpoints was included in it. Although the endpoint terminus was absolutely correct, the milepost, it included a parenthetical description that was incorrect, that stated that the location of that milepost was somewhere that it wasn't. Not only did it say something that was incorrect, it said something nonsensical. It described the railroad's crossing of a highway that it does not appear to cross. The CSC found that somehow that error actually resulted in a taking, a physical invasion of properties that were past the terminus. Ms. Kranz, this is Judge Stoll. Hello, this is Judge Stoll. Could I ask you a question? I understand your argument. As I understand it, your first argument is that it wasn't reasonable for the Court of Federal Claims to interpret the NISIs to include this particular land, and your second argument was that deposition testimony and other evidence demonstrate that the railroad never intended to abandon this portion of the railroad line. I would like to ask you some questions about your second point, just because there's not a lot of detail on this in your brief, and so I want to make sure I understand the facts correctly. So, my first question is, when would the railroad have abandoned the land east of milepost 65.8, absent the NISU? It would not have abandoned it. And do I... It never intended to. Can I continue? I would like to ask you, do I understand correctly that at the time of the NISU, before the NISU, let me just break this down. Before the NISU, CGA had leased this land to a different railroad. I think it's Squaw Creek Southern. Is that right? That's correct. And after issuing to the NISU, about six months after, I guess Squaw Creek Southern wasn't interested anymore and gave the land back to CGA, which then leased the land to Carter Perot. Is that correct? Yes, I believe that's right as well. Okay. I think, is there anything in your brief you suggest maybe that these are undisputed facts? Is that true? Yes, I believe so. I don't believe that the plaintiffs have disputed at all that the railroad was actively leasing the section of rail line east of milepost 65.8 to other rail lines, and that those railroads were, you know, taking actions that were totally inconsistent with abandonment or conversion to trail use. Okay. And then the last question I have is that your brief cites the Cochlin case. What is the status of that case? I think it might be that it's been argued and you're just waiting decision? That's correct. And to be clear, we don't think you need to wait for Cochlin unless you were inclined to find a taking here, in which case that case has the potential to change the analysis for when you have a need to only taking claim where there's been no conversion to trail use. I don't think you need to wait for Cochlin. I think there are plenty of reasons that there's been no taking here totally apart from the issue in Cochlin. Okay. Any more questions from the panel at the moment? We'll have rebuttal for Ms. Kranz. Okay. I hear silence. We'll hear from Mr. Stewart. No questions for me. Hello. Thank you, Your Honor. This is Tom Stewart. May it please the court. The critical issue obviously pertains to the 27 railroad form deeds and whether they conveyed an easement or fee to the railroad. In all candor, the government's briefs made it very difficult to analyze that issue due to some major and significant omissions. The first one actually probably occurred in their statement of related cases under Rule 47.5 where they failed to even mention the Jackson v. United States case, which is a case pending in the CFC where Judge Williams entered an order basically exactly the same as Judge Sweeney did. It's never cited in the government's brief, either their original brief or their reply brief. Then more importantly, that their briefs contained several omissions. First, they failed to present the deeds as a whole, which is a cardinal rule of construction for any court to examine the deeds at issue. Second, they, as the court pointed out, failed to even acknowledge that the deeds were titled right-of-way deed, which frankly should have been conclusive on the railroad's intent anyway. Third, they failed to even include the entire granting clause. They keep referring to it as a grant of land, but the granting clause is specifically a strip of land for a right-of-way of said railroad. Under a long line of cases from the Georgia Supreme Court, that amounts to a grant of an easement. Then also, they failed to include the language in the deeds where they described the grants were along the line of the recent survey through my lands, thereby attempting to ignore that the deeds were obtained for limited railroad purposes under Georgia's controlling statute. And on that issue, after totally ignoring the governing statute in their opening brief, then the government totally misinterpreted the issue in their reply brief. The important provisions of Georgia's controlling statute, which is set out in our brief in detail, is section 1689I. And under that statute, the railroad could conduct a survey, like they did in this instance, to select the most advantageous route. The survey was to aid in the construction of the railroad's right-of-way under the statute. The railroad could hold and use the right-of-way as may be necessary for the railroad's operation, which is basically to accept such voluntary grants of real estate to aid in the construction of the railroad. And those voluntary grants under the statute could be used and retained by the railroad for the purpose of such grant only, which was railroad purposes. In other words, under these, all of these deeds, and under Georgia's rules of construction, these attendant circumstances are necessary for the court to examine. And Judge Sweeney did a thorough job of examining them. And in this instance, those attendant circumstances, where the railroad surveyed it, laid it out, and then got a voluntary grant from the landowners, were all set forth in the deeds themselves. In the government's reply brief, the government says that Georgia code section 1689 did not preclude the railroad from purchasing a fee interest. And we would agree that that's not the point at all. It totally misstates the issue. The government focused in their reply brief, after not mentioning the statute at all in their opening brief, that they said plaintiff's argument is premised on section 1689L. And the short answer to that is, no, it's not at all. It's premised on 1689I. Section 1689L is the condemnation statute. And the way this process works is, the railroad surveys the land, and if they get a voluntary grant from the landowner, which is basically defined as nominal consideration, as the court pointed out, most, if not all, of these deeds are $1, and some are $5, and some are $10. That's definitely a voluntary grant, because it's minimal consideration under the law. So the statute lays out the exact circumstances that were present at the time the form deeds were granted to the railroad. And frankly, under authority from this court in Preso 2, and the Georgia Supreme Court in several cases, those circumstances must be taken into consideration. Now, although the Georgia statute does not obviate the fundamental obligation of the court to examine the language of the deeds, like Judge Sweeney did in detail, the court should and did give it significant weight. And it's telling that the government didn't even mention it. And then, after all of these omissions, that the government misapplied the law in several respects. First, they maintain that there is a presumption of fee under Georgia's statutes. And in fact, the government wrongly focuses much of its brief on establishing the false premise that Georgia's statute mandates that any and all of the deeds, no matter the subject matter or attendant facts and circumstances, are presumed to convey the fee simple. But under the Georgia code, even cited by the government, the fact is that the statute says that the deeds are presumed to convey the fee simple in land unless they specifically indicate the conveyance of a lesser estate. And that is not a presumption at all. It is a mere statement of the standard. And we will do it. Yes, ma'am. This is Judge Stoll. I appreciate your argument and understand. Could I ask you quickly a few questions about the other issue, which is about the land east of milepost 65.8? So yes, yes, you're on. Okay, I want to ask you the same questions that I asked the government, which is, when would the railroad, I mean, assuming that I think the Court of Federal Claims reading of the statute to include certain land east of milepost 65.8 was reasonable, when would the railroad have abandoned the land east of milepost 65.8 absent the NITU? The government says it would not have because that land, the railroad had leased it to another railroad. Do you dispute that? I honestly don't know, and I'm not in a position to dispute it, Your Honor. The, it may very well be the fact, but what happened here is, you know, the government's argument is based on whether or not they actually intended to abandon that portion east of milepost 65.80. And the fact of the matter is, is they absolutely intended to abandon it up until the time that the corrected NITU was filed. And the reason is, is that in all of the documents filed with the SPB before the NITU was issued, the railroad specifically included their request to abandon, just as Judge Sweeney found all that land up to the intersection where the railroad crosses Highway 229. Now, the government says that, that is both a ministerial error and incorrect, but that statement is false. If you look at a map, Can I just ask you, so your point is that, you know, this, what we'll call a typo or on the map, that that same mistake was made in the original request to abandon. So it's your point of view that the, because it was included in the request to abandon, the railroad would have abandoned the land, even though it perhaps had leased the land to another railroad. Is that your position? Yes, that's correct, Your Honor. That language was specifically repeated from the railroad's own request, where they filed their original petition for exemption with the Surface Transportation Board, requesting to abandon all of that line to mile marker 65.80 at that point where it crossed Highway 229. Can I ask, you do have a record site for me in the appendix for where the original request to abandon is? Your Honor, I will look right now and find it. It is actually in both the government's brief and the... I want it in the appendix. I'd like this to be... I understand, Your Honor. The appendix is in there. Let's see. Yes, on July 19th, I believe it's appendix 1588-1591. Okay. Counsel, was this NITU issue raised in the original briefing or did it come in only on a motion to reconsider the court's summary judgment? I believe it was raised based on the motion for reconsideration, Your Honor. It was fully reconsidered. Right. Okay. And it's interesting to point out on that particular issue, you know, the government's reply brief says, you know, asked a rhetorical question, what would have occurred if the government had not acted to file an amended NITU? And the fact of the matter is, it would have either been abandoned because that's exactly what the government signed. It would have been abandoned pursuant to the NITU, the original NITU. And if the original, or excuse me, if the corrected NITU had not been issued, then the trade use agreement would have covered it and it would have been included in the second time. So it was only the second NITU that corrected the situation. Okay. Counsel, what about the deposition testimony? There's 30B6 deposition testimony in the record from Carter Perot that says that CGA leased this land to Squaw Creek Southern and then to Carter Perot. Do you dispute that? No, Your Honor. I attended that deposition. I recognize and remember that that was his testimony. Okay. The fact is, though, that what they're really wanting you to do is to change the existing law that's been the law ever since LADD was issued because, as Judge Sweeney pointed out, the issuance of the NITU affects the taking at the time the NITU was issued. That's the standing law in the federal circuit right now. And so the government is basically attempting a collateral attack on all of that precedent to say that the NITU cannot have been or would not have prevented abandonment and therefore did not constitute a physical taking, in essence relying on a reversal of all the federal circuit's precedent, which they're hoping for in Kaplan, because absent that, there is no question right now that the rule is that the issuance of the NITU triggers a categorical physical taking at the time that the NITU was issued, irrespective of whether it ultimately turns out to be temporary or not. Now, if I can, I'm not sure how much time I have left, Your Honor, but I want to go back. Can I ask you one question? I just want a question in respect to what you just said. Doesn't Caldwell say that when a NITU is issued and state law reversionary interest that would otherwise take effect, that a taking occurs? I'm quoting from the case now. A Fifth Amendment taking, if any, under the Trails Act is accomplished when a NITU is issued and state law reversionary interest that would otherwise take effect pursuant to normal abandonment are forestalled. If, in fact, no abandonment would have occurred, how could those proceedings be forestalled? Abandonment would have occurred under state law, Your Honor, if the declaration of intent to abandon, and that is the long line of cases that started in Preso 2, including Caldwell, Barkley, Illig, Ladd, all of the federal circuit's precedent since 1996. And if you go and read Justice O'Connor's dissent in, excuse me, concurring opinion in Preso 1, back in 1990, she laid out these exact facts where when the NITU is issued, it interferes with state law reversionary rights on the day that the NITU is issued, and that's why the taking occurs at that time, whether they actually consummate federal law abandonment at that time or not. And that's the blocking of the state law reversionary right that occurs when the NITU is issued. If I can go back just briefly, I want to talk about the long line of cases that came from the Georgia Supreme Court because we're actually fortunate, and Judge Sweeney was fortunate to have a long line of cases to analyze with respect to the deed language, starting with the Gaston case in 1904, all the land necessary for roadbeds to construct the easement. That was a grant of land for railroad purposes was found to be an easement. In Coffey County in 1921, it was the grant of 100 feet and width of right-of-way conveyed an easement. And most importantly, the court pointed out that the use of right-of-way was not nearly descriptive in that sense at all, and that is one of the arguments the government keeps making here where they say it's not only a grant of land, which is an incomplete statement, obviously just looking at the deeds, but it's also used in a descriptive sense, which is totally inaccurate as well. And if you go through the line of cases, Dugan in 1930, and then primarily Rogers v. Pitchford in 1936, it contains an almost identical granting clause where it says a grant of a strip of land through the property where the railroad track is now located for a railroad right-of-way. And what's interesting about that, the government relies on Valdosta repeatedly, a dozen times or more in their brief, because Valdosta was a grant of land that was later described as a railroad right-of-way, and this is a grant of a strip of land for a railroad right-of-way where it's not descriptive at all. And in fact, in Rogers v. Pitchford, Valdosta was specifically distinguished because of the consideration of $400, and it was later also distinguished in Askew v. Spence in 1954, and Jackson v. Sorrells in 1956, cases that Judge Sweeney correctly analyzed and reviewed and relied on in reaching the conclusion that these deeds conveyed an easement to the railroad. And if I might briefly in my note 213, because this is a situation where once again, the government has unfortunately tried a complete sleight of hand argument. They basically tried to set out a prototypical deed, but they failed to even include the pertinent language from the applicable deeds that clearly establishes that the applicable deeds conveyed an easement. And then the government also failed to even mention that each deed was entitled right-of-way deed, and that each deed was specifically granted as a state-aid road. And what's important is the one case they cite, the Knight case, has major differences because it was not a state-aid road at all, but was instead granted pursuant to a limited access highway act, which is like gaining access to a federal highway or a federal interstate, which is conveyed in fee, whereas state-aid roads pursuant to Georgia's statute are the grants of easements only. And so unless the court has any additional questions, then I believe my time is up. Any more questions from the panel? No. Okay. Thank you, Ms. Stewart. Ms. Krause, you have three minutes. Thank you. I'll start with the 65.80 issue first. The terminus, the milepost terminus here is the terminus. The parenthetical is included for convenience, but an error in the parenthetical does not change the definitive terminus of the rail line that was plated for abandonment. The Seventh Circuit has directly addressed this issue in the Montezuma-Green case, and there's no need for you to create a different rule. The railroad couldn't have and did not intend to abandon any section of rail line east of milepost 65.80, as it was undisputedly actively leased to another railroad, even under Ladd. And the other Federal Circuit precedent described, I'm not, I don't think we need to get into whether opposing counsel correctly described that precedent, but even under all that precedent, as it actually is, there's nothing here that could have constituted a physical taking. There was no physical invasion, and there was no abandonment that could have been thwarted. Turning to the deed issues, the Valdosta, the Rogers, and the Woods case, we think are the most similar cases that you should focus on. And they absolutely rebut the idea that plaintiffs are pushing here, that a railroad basically can't take a fee easement, a fee interest in a rail corridor. Did those cases recite a right-of-way? The Valdosta case conveys, grants a strip of land for a right-of-way. The Rogers case also grants land, and it's for railroad purposes. And the Woods case grants a strip of land, just like here, and indeed, it's clear that the intended use is for a rail corridor, yes. Now, the big difference in the long list of cases that plaintiffs are relying on here is that in each, the cases that they rely on that do purport to grant, quote, a strip of land, contain explicit statements in the deed that rebut the idea that they would be conveying a fee simple. They're inconsistent with the grant of fee simple. So, in the pitch for a deed, you have reserving the right to cultivate any of the above described land until needed for railroad purposes. There's also no warranty clause, and it's not to successors and assigns of the rail company, like the deeds were here. In ASKU, they have reserving the right to cross and cultivate, and there's a statement that if work is not commenced in two years, the property will revert, and there's no warranty. We don't have a reservation here. We don't have that kind of reversion clause here, and we do have a warranty. In the Sorrell's case, again, there's a reserved right to cultivate the land, and the railroad is required to keep up stop gaps. These deeds not contain any of those types of explicit reservations or affirmative requirements that would be inconsistent with the grant of fee. Therefore, the purported grant of a strip of land must be a grant of fee here. I hear, I believe that was my time up. It was. Any more questions from the panel? No. Okay. Thank you both. This is well argued. It's taken under submission. Thank you.